

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
UNITED STATES COURT OF APPEALS

CHIMA NELSON UGOCHUKWU
Petitioner

U.S.D.C. #04CV10864

VS.
IMMIGRATION AND NATURALIZATION SERVICE
Respondent

EMERGENCY MOTION FOR STAY OF REMOVAL AND MOTION FOR RELEASE FROM CUSTODY

Petitioner is seeking a stay of removal from an administrative order of removal entered by the Board of Immigration Appeals, essentially affirming a decision by the Immigration Court. We respectfully assert that if this case were to remanded to the Immigration and Naturalization Service(hereinafter referred to as INS), there is a more than reasonable likelihood of success exceeding the minimum required standards outlined by Judge Selya in AREVALO V. ASHCROFT, 344 F. 3d 1(1st Cir. 2003). Those standards express a four pronged test that must be satisfied in order for a stay to be allowed. What follows is a discussion of each of the four prongs and how it applies to the instant case.

1.PETITIONER IS LIKELY TO SUCCEED ON THE MERITS OF HIS UNDERLYING OBJECTION

The petitioner is a citizen of Nigeria. He is 30 years old and married to a United States citizen. He has no criminal convictions. He and other members of his family have been subjected to repression and persecution due to political circumstances in Nigeria. He is a textbook example of an individual entitled to asylum in the United States based on the Convention against Torture.

The petitioner fled his native Nigeria, originally going to South Korea before arriving in Los Angeles in February of 2000, his original entry into the United States. He was placed in detention at Los Angeles International Airport, and was freed from custody upon the posting of bond for him by a family member.

His wife is sponsoring him for a green card and, to the best of undersigned counsel's knowledge, that matter has yet to be ruled on. The repression and persecution the petitioner the petitioner has been subjected to stems from the actions of a notorious cult/political organization known as Ogboni. This is a ritualistic organization that heavily influences the educational, legal and political system of Nigeria. The petitioner's father, now deceased, was coerced into membership into Ogboni. His father wanted to leave the organization and was murdered, as was the petitioner's mother. The petitioner fled Nigeria because he reasonably believed that he was at risk. The petitioner cannot currently locate either of his two sisters. The last he knew of them, they were in Nigeria. While in Nigeria, the petitioner was arrested on trumped up charges and was physically beaten.

Ogboni has a deplorable history of wantonly abusing the rights of the Nigerian people. Ogboni members will forcibly rape women who do not submit to sexual relationships.

The Attorney General of Nigeria was assassinated and it took two years to even bring charges against the alleged killer.

In addition to his parents being murdered by the Ogboni cult, one of the petitioner's uncles and cousins were murdered by them, as well.

On or about December, 1994, six members of Ogboni's "Criminal Investigation Department" shot their way into the petitioner's house and physically beat the petitioner's father and brother. The petitioner cannot, at present, account for any of his four brothers, all of whom were living in Nigeria at the time he fled.

While in Nigeria, the petitioner was refused the opportunity of fulfilling his dream of serving in the military. Military service affords status and recognition among the Nigerian people. The reason the petitioner was refused the opportunity was his refusal to change his name to a Hausa, the Hausas being a Muslim tribe that is part of the ruling class of Nigeria.

According to the website, asylumlaw.org, "the Ogboni are reputed to threaten its members with death should they break their oath of secrecy regarding its rituals and beliefs. It is still regarded as being a powerful organization throughout Nigeria."

Were it not for the BCIS delay in issuing an approval notice in an obviously approvable case, the petitioner would more likely than not already either be a permanent resident or at least be immediately eligible to become one. He already has a pending green card application.

In addition to the more than reasonable likelihood of success should this case be remanded to INS, under the terms of the Convention against Torture, the INS memorandum of April 27, 1998, and recent decisions of the INS accepting petitions filed pursuant to these protections, compliance with U.S. treaty obligations REQUIRE(emphasis added) that qualifying individuals facing the prospect of severe pain and suffering through the action or acquiescence of government officials, and whose applications for asylum have been rejected and who are subject to a final deportation order, are entitled to automatic withholding of deportation on the filing and acceptance for consideration of a petition under the Convention Against Torture.

II. PETITIONER WILL SUFFER IRREPARABLE HARM ABSENT THE STAY

Clearly, the instant case satisfies this prong. If the stay is not granted, petitioner will be removed from the United States.

III. THIS HARM OUTWEIGHS ANY POTENTIAL HARM FAIRLY ATTRIBUTABLE TO THE GRANTING OF THE STAY

No harm would accrue to our nation if the petitioner stays here but great harm will accrue to him if he is deported.

IV. THAT THE STAY WOULD NOT DISSERVE THE PUBLIC INTEREST

This is a married man with an American wife who is seeking gainful, productive employment. He has no criminal history and there is nothing in his background or character that would suggest he would be anything other than a positively contributing member of society.

We respectfully assert that all four prongs of the standard established in the leading case of AREVALO, supra, have been satisfied and that a stay should be granted with this case remanded to INS.

The petitioner,

CHIMA NELSON UGOCHUKWU.
By his attorney,

*John Himmelstein*

John Himmelstein

~~[redacted]~~ 929 Massachusetts Avenue
~~[redacted]~~ Cambridge, MA 02139
~~[redacted]~~ (617) 256-4821
BBO #547275   (617) 868-2533

ADDENDUM

Petitioner was placed in custody by I.N.S. on October 21, 2004. Petitioner reported to I.N.S. as he was instructed to do. Bond had already been posted by a family member of petitioner and all of the terms of his bail had been complied with. There was absolutely no need to place petitioner in custody and, at the time he was placed in custody, a Motion to Stay was already in place. We respectfully move that this Honorable Court order his removal from custody.

Counsel for the petitioner apologizes to this Honorable Court for submitting a motion that is, in part, handwritten. Counsel for the petitioner is in the middle of moving his office and the computer in his office is temporarily malfunctioning. A copy of the most recent BIA ruling is attached.

Respectfully submitted,

*John Himmelstein*

JOHN HIMMELSTEIN, ESQ.

**U.S. Department of Justice**  Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

---

File:   A77 297 077 - Boston                                Date:   MAR 29 2004

In re: CHIMA NELSON UGOCHUKWU a.k.a. George D. Patterson II

IN REMOVAL PROCEEDINGS

MOTION

ON BEHALF OF RESPONDENT:   Mark D. Cooper, Esquire

APPLICATION: Reopening; reconsideration

   This case was last before us on October 28, 2003, when we dismissed the respondent's appeal from an Immigration Judge's denial of the respondent's applications for asylum, withholding of removal, relief pursuant to the Convention Against Torture, and voluntary departure. On January 9, 2004, the respondent filed a motion to reopen, contending that he is prima facie eligible for adjustment of status based on his bona fide marriage to a United States citizen. He is also moving for reconsideration of our decision denying his applications for relief by apparently claiming that we erred in failing to find that the Immigration Judge was biased and order a new hearing. We will deny the motions.[1]

   The respondent married his United States citizen spouse while he was in removal proceedings. A motion to reopen to apply for adjustment of status based on a marriage that occurred during removal proceedings must be supported by clear and convincing evidence indicating a strong likelihood that the respondent's marriage is bona fide. *See Matter of Velarde,* 23 I&N Dec. 253 (BIA 2002). The respondent failed to submit any evidence, other than his marriage certificate, to serve as clear and convincing evidence indicating a strong likelihood that the respondent's marriage is bona fide. In addition, the respondent also failed to submit an Application to Adjust Status (Form I-485) with his motion, and therefore, the motion does not comport with the regulatory requirement that "[a] motion to reopen proceedings for the purpose of submitting an application for relief must be accompanied by the appropriate application for relief and all supporting documentation." 8 C.F.R. § 1003.2(c)(1). Accordingly, the respondent's motion to reopen to apply for adjustment of status must be denied.

---

[1] We note that on January 28, 2004, an attorney who is not the respondent's attorney of record purported to submit another motion to reopen on behalf of the respondent. However, such attorney submitted a Notice of Entry of Appearance Before the Immigration Court (Form EOIR-28), not a Notice of Entry of Appearance Before the Board (Form EOIR-27) as is required, the respondent did not sign the Form EOIR-28, and there was no notice or request for a change of counsel submitted by the respondent. We will, therefore, not consider the second motion to reopen filed by such attorney as there is no indication that the respondent intended for such motion to be filed on his behalf. Furthermore, even if the respondent intended such motion to be filed, we could not consider it as it is the second motion to reopen to be filed and is, therefore, barred by the regulations. *See* 8 C.F.R. § 1003.2(c)(2).

  To the extent that the respondent is requesting that we reconsider our decision because we erred in failing to order a new hearing based on his claims that the Immigration Judge was biased, we note that such motion is untimely. *See* 8 C.F.R. § 1003.2(b)(2). However, even if we were to entertain his motion to reconsider, we note that we considered the respondent's claims of bias when deciding the respondent's appeal and conducted a de novo review of his case. The respondent has failed to specifically explain how we erred. The respondent has also failed to explain why last year's suspension of the Immigration Judge who issued the decision in his case should result in a different decision on our part. Accordingly, the respondent's motion for reconsideration must also be denied.

ORDER: The respondent's motions are denied.

          _____
            FOR THE BOARD

2